483 So.2d 341 (1986)
Larry Dale BRABHAM
v.
Felicia Reeves BRABHAM.
No. 55281.
Supreme Court of Mississippi.
February 5, 1986.
T. Mack Brabham, McComb, for appellant.
John Gordon Roach, Jr., Roach, McMillan & Welch, McComb, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Felicia Reeves Brabham filed a petition against Larry Dale Brabham in the Chancery Court of Amite County praying the court to hold Larry Dale Brabham in contempt of court for failure to pay child support. Brabham filed an answer and cross-petition setting up possible fraud in the paternity of the children, and seeking blood tests to determine paternity. From a denial of the cross-petition, Brabham appeals here and assigns one error in the trial below.

DID THE LOWER COURT COMMIT ERROR WHEN IT DECLINED TO HEAR APPELLANT'S PROOF CONCERNING THE POSSIBILITY OF A FRAUD HAVING BEEN PERPETRATED ON THE APPELLANT AND THE COURT WITH REGARD TO ESTABLISHING THE NATURAL FATHER OF THE MINOR CHILDREN AND IN HOLDING THAT THE COURT COULD NOT ORDER REQUESTED BLOOD TESTS UNLESS AN ACTUAL FRAUD BY APPELLEE CONCERNING THE *342 PARENTAGE OF THE CHILDREN WAS PROVED?
Two children were born during the marriage of the Brabhams, viz, a boy, born May 5, 1978, and a girl, born March 3, 1980. The parties were divorced January 13, 1981, with appellee being awarded custody of the minor children, together with support for them.
Appellant charges in the cross-petition that appellee may have perpetrated a fraud upon appellant and the court in that petitioner had received information that the minor children might not be the natural children of appellant; that he did not deny the children are his natural children, but that, due to information he has received, substantial doubt has been raised in his mind thereasto; and that the court should require both parties to undergo blood tests for a final hearing to adjudicate the paternity of the children. Appellee answered the cross-petition, stating that the children are the natural children of appellant as determined by the court and by the personal knowledge of appellee.
In all averments of fraud, the circumstances constituting the fraud shall be stated with particularity. Fraud will not be inferred or presumed and may not be charged in general terms. The circumstances of the alleged fraud such as the time, place and contents of any false representations or conduct must be stated. Rule 9(b), Miss. Rules Civ.Proc.; McMahon v. McMahon, 247 Miss. 822, 157 So.2d 494, 495 (1963); Griffith, Mississippi Chancery Practice § 589 (2d ed. 1950). Appellant's attorney frankly admitted to the lower court that appellant was not charging fraud, but the possibility of fraud, and that the only way he could establish fraud was through the blood tests.
The strong presumption of legitimacy was discussed in Foster v. Foster, 344 So.2d 460 (Miss. 1977), where the Court said:
The chancellor took into consideration this Court's consistent pronouncements for more than 100 years that one of the strongest presumptions known to the law is the presumption that a child born in wedlock is a legitimate child. Herring v. Goodson, 43 Miss. 392 (1870).
The latest pronouncement by this Court on this subject was made in Dixon v. Curtis, 340 So.2d 722 (Miss. 1977). Just a month ago, this Court said:
"The presumption that a child born in wedlock is a legitimate child is one of the strongest presumptions known to the law, Krohn v. Migues, 274 So.2d 654 (Miss. 1973), and may be rebutted only by proof beyond a reasonable doubt that the husband is not the father. Stone v. Stone, 210 So.2d 672 (Miss. 1968).
344 So.2d at 462.
Appellant made a proffer of witnesses, who would testify about rumors they had heard in the community and statements appellee had made. However, the effort appellant makes to obtain blood tests at this late hour appear to be a fishing expedition, upon which courts do not embark. The children were five and three years of age, respectively, at the time the lower court entered its decision. They are now approximately 7 1/2 years and 6 years of age. It is significant that the question of paternity was never raised until the contempt action was filed and an increase in child support was sought.
The state and public have an interest in the matter now before the Court, commonly known as "public policy." In Stone v. Stone, supra, this Court said:
Certainly public policy demands that a child born in wedlock should not be branded as illegitimate except in those cases where the proof is so strong that there is no reasonable doubt that the husband is not the father. Nothing less will suffice.
210 So.2d at 674-75.
Although, in this nuclear, rocket and shuttle age, science has changed capability, evidence and thinking, the pronouncement in Moore v. State, 178 Miss. 383, 172 So. 317 (1937), citing Lord Mansfield, still sounds of sense and logic:

*343 As to the time of the birth, the father and mother are the most proper witnesses to prove it. But it is a rule, founded in decency, morality, and policy, that they shall not be permitted to say after marriage that they have had no connection, and therefore that the offspring is spurious; ... .
172 So. at 318.
We reiterate that the presumption a child born in wedlock is a legitimate child is one of the strongest presumptions known to the law and may be overcome only by proof beyond a reasonable doubt that the husband is not the father. We think the charge in the counter-petition that appellant may not be the father of the children and the proffer of rumors and hearsay by appellant are insufficient to order blood tests at this time. Our opinion is fortified by the adjudication of paternity in the decree of January 13, 1981, and because the appellant has recognized that he is the father of the children until filing of his counter-petition on June 22, 1983.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
DAN M. LEE, J., concurs in result only.