Timothy Wayne KEMP v. STATE of Arkansas

CR 00-482 74 S.W.3d 224

Supreme Court of Arkansas
Opinion delivered May 16, 2002

*Sam T. Heuer*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michale C. Angel*, Ass't Att'y Gen., for appellee.

RAY THORNTON, Justice. This appeal arises from a trial court's denial of the Rule 37 petition. Appellant, Timothy Kemp, was arrested and charged with four counts of capital murder. He was convicted and sentenced to death by lethal injection on each count. The factual background surrounding appellant's conviction was outlined in *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996)(*Kemp I*).

In *Kemp I*, we affirmed the conviction and sentence pertaining to one victim, Richard Falls, and affirmed the convictions only as to the remaining three counts. We reversed the death sentences as to the three remaining counts and remanded for resentencing, as there was insufficient evidence to support the trial

court's instruction to the jury with respect to the statutory aggravating circumstance that the murders were committed for the purpose of avoiding arrest. *Id*.

Following resentencing, the trial court again imposed the death sentence as to each of the three counts. Appellant then appealed to this court. *See Kemp v. State*, 335 Ark. 139, 983 S.W.2d 383 (1998), *cert.* denied 526 U.S. 1073 (1999) (*"Kemp II"*). On appeal, he challenged the admissibility of victim-impact evidence, the constitutionality of the victim-impact statute, and the applicability of the law-of-the-case doctrine. We affirmed appellant's three death sentences. *Id*.

Thereafter, appellant filed a petition for postconviction relief pursuant to Ark. R. Crim. P. 37. After a hearing on the matter, the trial court denied the Rule 37 petition. This order was appealed to our court in *Kemp v. State*, 347 Ark. 52, 60 S.W.3d 404 (2001)(*"Kemp IV"*)[1]. We determined that the trial court's order did not comply with the requirements of Rule 37.5(i) of the Arkansas Rules of Criminal Procedure, and remanded the matter

---

[1] We note that the procedural argument raised by the State was addressed in *Kemp IV, supra*. Specifically, we held:

> In its brief, the State argues that appellant's claims pertaining to the death sentence for one victim, Richard Falls, should be procedurally barred because the Rule 37 petition was untimely. However, the State overlooks our decision of *Kemp v. State*, 326 Ark. 910, 934 S.W.2d 526 (1996) (*per curiam*) (*"Kemp III"*), where we concluded:
>
>> We recall the portion of the mandate affirming the conviction and death sentence and stay it until such time as a final disposition of the remaining counts is complete. As such, any petition under Ark. R. Crim. P. 37.2(c) must be filed within sixty days of a mandate following an appeal taken after re-sentencing on the remaining counts. If no appeal is taken after re-sentencing on these counts, the petition must be filed with the appropriate circuit court within ninety days of the entry of judgment.
>
> *Kemp III*.
>
> Here, appellant timely filed his Rule 37 petition. The mandate of our court was returned to the trial court on April 29, 1999, and on May 18, 1999, appellant appeared before the trial court, at which time the trial court appointed Mr. Heuer, counsel for appellant, who met the qualifications set forth in Rule 37.5(b)(2). On August 11, 1999, appellant filed his Rule 37 petition. Therefore, appellant's Rule 37 petition was not untimely with regard to the Falls's sentence.

*Kemp IV*.

to the trial court for specific factual findings. On April 5, 2002, the trial court's amended order, denying appellant's petition for postconviction relief, was filed.

It is from that order that appellant brings this appeal. Finding no reversible error, we affirm the trial court.

■ On appeal from a trial court's ruling on Rule 37 relief, we will not reverse the trial court's decision granting or denying postconviction relief unless it is clearly erroneous. *Davis v. State*, 345 Ark. 161, 44 S.W.3d 726 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

■ The criteria for assessing the effectiveness of counsel were enunciated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), which provides that when a convicted defendant complains of ineffective assistance of counsel he must show that counsel's representation fell below an objective standard of reasonableness and that but for counsel's errors the result of the trial would have been different. *Id.* We have adopted the rationale of *Strickland* and held that:

> To prevail on any claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. Secondly, the petitioner must show that the deficient performance prejudiced the defense, which requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial.

*Thomas v. State*, 330 Ark. 442, 954 S.W.2d 255 (1997)(internal citations omitted). In *Thomas*, we further held:

> In reviewing the denial of relief under Rule 37, this court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt in that the decision reached would have been different absent the errors. A reasonable probability is a

> probability sufficient to undermine confidence in the outcome of the trial.

*Id.* (internal citations omitted). Remaining mindful of the applicable standard of review, we turn now to appellant's points on appeal.

For his first allegation of error, appellant argues that trial counsel was ineffective for failing to investigate the ownership of a weapon found at the crime scene. Specifically, he argues that a further investigation into this matter would have had bearing on his "imperfect self-defense" claim.

 Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Dumond v. State*, 294 Ark. 379, 743 S.W.2d 779 (1988). A decision not to investigate must be directly assessed for reasonableness under all the circumstances, applying a heavy measure of deference to counsel's judgments. *Id.* (*citing Strickland, supra*).

At the hearing on appellant's petition, trial counsel testified that the "imperfect self-defense" was the heart of appellant's defense in the mitigation phase of the trial. Specifically, in mitigation, trial counsel argued that appellant believed, because he was intoxicated, that he acted in self-defense. At the hearing, trial counsel also offered his rationale for not investigating the gun's ownership. He testified that:

> In the penalty phase in the first trial, the jury made a finding, and I do not recall whether it was unanimous or not unanimous, but the record would reflect whatever it was — that — with my proposed mitigator—our proposed mitigator of he believed he was acting in self-defense.

> \* \* \*

> There was a weapon found that was not associated with Mr. Kemp. And he had indicated — he had indicated to me in the trial preparation that one of the people had a weapon, and of course, there was a weapon found. We did elicit that fact, which again played into our he thought he was acting in self-defense.

> \* \* \*

In terms of presenting this, of course Mr. Kemp did not testify.

* * *

So , we had — we — we had some limitations on exactly what we could allege that Mr. Kemp perceived when he did not testify.

* * *

It [the weapon that was found] was a different caliber from the weapon that was the homicide weapon.

* * *

No, [I did not take steps to ascertain ownership of the weapon] I don't recall having done so. Of course, it was present at the scene and which for our purposes was — it was present at the scene; it was associated with one of the deceased individuals. And, for our purposes, that — that's what we needed — needed to know.

On this issue, the trial court found:

> in light of the circumstances of this case, the decision of Kemp's counsel not to further investigate the ownership of the weapon was not unreasonable. For example, as explained previously by this court at Kemp's postconviction relief hearing, the issue of ownership of the weapon was raised at trial, and the jury had ample opportunity to consider that issue as part of Kemp's self-defense claim. Further, Kemp failed to articulate how he was prejudiced by the fact that his attorney failed to further investigate the ownership of the weapon. Kemp merely states that had his attorney further investigated this matter, it would have affected his self-defense claim.

· ■ After reviewing the facts surrounding this issue, we conclude that trial counsel's failure to investigate the ownership of the gun found at the crime scene did not constitute ineffective assistance of counsel. Specifically, we hold that determining who owned the weapon would not have changed the outcome of the trial. Moreover, we note that trial counsel fully developed appellant's self-defense claim without knowing the identity of the gun's owner. The jury was informed that a gun was found at the scene and that the gun did not match the weapon that was used to com-

mit the murders. From this evidence, the jury could have determined that one of the victims had a gun and that appellant was forced to use his gun in self defense. Accordingly, the trial court's finding on this issue was not clearly erroneous.

For his second allegation of error, appellant argues that trial counsel was ineffective for failing to correctly cite Ark. Code Ann. § 5-2-614 (Repl. 1997), the statute regarding the "imperfect self-defense," in a proffered jury instruction. Specifically, he argues that omitting a phrase from the statute constituted ineffective assistance of counsel.

The statute provides:

> (a) When a person believes that the use of force is necessary for any of the purposes justifying that use of force under this subchapter but the person is reckless or negligent either in forming that belief or in employing an excessive degree of physical force, the justification afforded by this subchapter is unavailable in a prosecution for an offense for which recklessness or negligence suffices to establish culpability.

> (b) When a person is justified under this subchapter in using force but he recklessly or negligently injures or creates a substantial risk of injury to a third party, the justification afforded by this subchapter is unavailable in a prosecution for such recklessness or negligence toward the third party.

Ark. Code Ann. § 5-2-614.

The instruction that trial counsel proffered at trial on the issue of appellant's claim of self-defense is as follows:

> When a person believes that the use of force is necessary in defense of himself but that person is reckless or negligent either in forming that belief or in employing an excessive degree of physical force, the defense of justification—use of deadly physical force in self-defense—is unavailable as a defense to any offense for which recklessness or negligence suffices to establish culpability.

The trial court refused the proffered jury instruction.

At the Rule 37 hearing, when asked about the jury instruction, trial counsel testified:

There were two statutory provisions dealing with what amounts to mistakenly, recklessly, or negligently forming the belief that one is acting in self-defense. They're in the statutes. They are not in the AMCI jury instructions. So, I proposed instructions based upon the statutes which deal with this precise situation. They were rejected by this court. We appealed on this basis and pointed out that they were specifically relevant because of the jury's findings in the penalty phase that Mr. Kemp felt he was acting in self-defense.

\* \* \*

Judge Humphrey turned these instructions down on the basis they weren't in the AMCI.

\* \* \*

What I did was I tried to make the jury instruction fit. You know, I used language that would be appropriate for a jury instruction.

\* \* \*

It was an instruction that went to the heart of our defense which was that Mr. Kemp had — had thought, perhaps wrongfully or mistakenly, that he was acting in self-defense.

On this issue, the trial court found:

the failure of Kemp's counsel to properly cite the model jury instruction was reasonable in light of the circumstances of this case, and that Kemp has failed to prove that he was prejudiced by his counsel's action. In so finding, the court notes that at trial, the jury heard evidence as to the amount of force used by Kemp and the reasonableness of his belief that such force was justified under the circumstances. Thus, that counsel omitted the phrase, ". . .is necessary for any of the purposes justifying that the use of force under this sub-chapter" does not amount to a showing that Kemp was denied a fair trial or that the trial would have been different but for counsel's error. Indeed, there is no showing that the court would have given this instruction even if counsel had cited it properly.

We must determine whether trial counsel's failure to cite Ark. Code Ann. § 5-2-614 correctly in the proffered jury instructions constituted a deficient performance that so prejudiced appellant that he was deprived of a fair trial. We have held that

there must be a rational basis in the evidence to warrant the giving of an instruction. *Allen v. State*, 326 Ark. 541, 932 S.W.2d 764 (1996). A party is entitled to an instruction on a defense if there is sufficient evidence to raise a question of fact or if there is any supporting evidence for the instruction. *Yocum v. State*, 325 Ark. 180, 925 S.W.2d 385 (1996). Where the defendant has offered sufficient evidence to raise a question of fact concerning a defense, the instructions must fully and fairly declare the law applicable to that defense; however, there is no error in refusing to give a jury instruction where there is no basis in the evidence to support the giving of the instruction. *Id.*

■ A person may not use deadly physical force in self-defense if he knows that he can avoid the necessity of using that force with complete safety by retreating. *See* Ark. Code Ann. § 5-2-607(b)(1) (Repl. 1997). Additionally, this defense is not applicable when one arms himself and goes to a place in anticipation that another will attack him. *See Girtman v. State*, 285 Ark. 13, 684 S.W.2d 806 (1985).

In the present case, there was no basis to provide the jury instruction for the "imperfect self-defense." At trial, the State established that appellant and his girlfriend, Becky Mahoney, rode around Little Rock drinking beer, before they stopped at the home of one of the victims, David Wayne Helton. After spending time at the residence, appellant asked Ms. Mahoney to leave with him. She declined, and another victim, Cheryl Phegley, asked him to leave as well. The evidence revealed that appellant left the crime scene, returned with a weapon, and killed the four victims while Ms. Mahoney hid in a closet. During the course of the shooting spree, appellant followed Cheryl Phegley down the hallway and shot her a second time. There was a total of twelve spent shell casings at the crime scene.

Additionally, Bill Stuckey, appellant's best friend, testified that appellant told him that Cheryl Phegley had started all the argument. Mr. Stuckey also testified that appellant was drinking when he came to his trailer, but that he was not as drunk as he had seen him before.

■ Based upon the evidence presented at trial, we conclude that there was no rational basis for the "imperfect self-defense" instruction. Although appellant had been drinking prior to the murders, there was testimony that appellant was not drunk. More significantly, we note that appellant left the residence, armed himself with a gun, returned to the residence, and opened fire upon entering the front door. Therefore, appellant could not rationally argue that he recklessly or negligently formed the belief that the use of deadly force was necessary to protect himself.

■ After reviewing the record before us, we cannot say that the trial court's finding that a different sentence would not have resulted if trial counsel had accurately cited Ark. Code Ann. § 5-2-614 in his proffered jury instruction was clearly erroneous. Accordingly, we hold that appellant failed to establish a claim for ineffective assistance of counsel on this point.

For his third allegation of error, appellant contends that trial counsel was ineffective for failing to request a severance of the trial. Specifically, he argues that counsel should have requested a severance of the separate counts of capital murder because a severance would have allowed the jury to consider each offense separately and would have ensured that there was no spilling-over of victim-impact testimony.

At the Rule 37 hearing, trial counsel offered an explanation as to why he chose not to request a severance. He stated:

> I did not [move to sever the four counts] because inasmuch as they were all at the same time. I mean they were—they were—the four people who were killed were killed one right after the other in the same place, at the same time. And I did not perceive any ground for a successful severance.

On this issue, the trial court found:

> Kemp's attack on the strategy of his trial counsel is not persuasive, and does not state a ground for Rule 37 post-conviction relief.
>
> * * *
>
> The decision to ask for severance is generally a matter of trial tactics and hence, not reviewable under Rule 37. Further, this

court finds that Kemp has failed to demonstrate how he was prejudiced, or that he was denied a fair trial due to counsel's failure to request and/or obtain severance.

 Rules 21.1 and Rule 22.2 of the Arkansas Rules of Criminal Procedure discuss the procedures whereby offenses are either joined or severed in criminal cases. Rule 21.1

Two (2) or more offenses may be joined in one (1) information or indictment with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:

(a) are of the same or similar character, even if not part of a single scheme or plan; or

(b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

*Id.* Rule 22.2 provides:

(a) Whenever two (2) or more offenses have been joined for trial solely on the ground that they are of the same or similar character and they are not part of a single scheme or plan, the defendant shall have a right to a severance of the offenses.

(b) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (a), shall grant a severance of offenses:

(i) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or

(ii) if during trial, upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.

*Id.* We have explained that the decision to sever offenses is discretionary with the trial court. *Henry v. State,* 309 Ark. 1, 828 S.W.2d 346 (1992). We have also held that we will affirm a trial court's denial of a motion to sever if the offenses at issue were part of a single scheme or plan or if the same body of evidence would be offered to prove each offense. *Id. See also Passley v. State,* 323 Ark. 301, 915 S.W.2d 248 (1996).

■ ■ After reviewing the evidence surrounding the crimes, we conclude that if trial counsel had filed a motion to sever the offenses his motion would have been denied. Specifically, the four murders, which occurred at the same location, at the same time, were clearly the result of a single scheme or plan. Moreover, the evidence offered at trial to establish each offense would be identical. Accordingly, a severance of the offenses was not proper. Because trial counsel's severance motion would not have been successful, appellant has failed to support a claim of ineffective assistance of counsel. *See Sanford v. State*, 342 Ark. 22, 25 S.W.3d 414 (2000)(holding that trial counsel cannot be ineffective when he fails to make an argument which has no merit). Therefore, the trial court properly denied appellant's claim of ineffective assistance of counsel on this point.

■ Additionally, as noted by the trial court, it can be argued that whether or not to move for a severance is a matter of trial strategy. We have held that matters of trial strategy and tactics, even if arguably improvident, are not grounds for a finding of ineffective assistance of counsel. *Williams v. State*, 347 Ark. 371, 59 S.W.3d 432 (2002).

■ For his fourth point, appellant reargues several issues which we have previously addressed. Rule 37 does not allow appellant to reargue points decided on direct appeal. In *Davis, supra*, we discussed the nature of Rule 37 and the type of claims which may or may not be pursued in this type of action. We explained:

> Rule 37 does not provide an opportunity to reargue points that were settled on direct appeal. *Coulter v. State*, 343 Ark. 22, 31 S.W.3d 826 (2000). The rule does not provide a remedy when an issue could have been raised in the trial or argued on appeal. *Weaver v. State*, 339 Ark. 97, 3 S.W.3d 323 (1999). Rule 37 does not permit a petitioner to raise questions that might have been raised at the trial or on the record on direct appeal, unless they are so fundamental as to render the judgment void and open to collateral attack. *Neal v. State*, 270 Ark. 442, 605 S.W.2d 421 (1980). Postconviction relief is not intended to permit the petitioner to again present questions that were passed upon on direct

appeal. *Hulsey v. State*, 268 Ark. 312, 595 S.W.2d 934 (1980). Rule 37 is a narrow remedy designed to prevent incarceration under a sentence so flawed as to be void. *Bohanan v. State*, 336 Ark. 367, 985 S.W.2d 708 (1999).

*Davis, supra.*

 Because appellant's arguments involve issues that are direct attacks on the judgment rather than collateral attacks, and because these issues have already been considered on direct appeal, these issues are not cognizable under Rule 37. However, in *Kemp IV*, out of an abundance of caution, and because this appeal involved a case in which the death penalty was imposed, we directed the trial court to make specific findings with regard to these issues that we now briefly address.

 First, appellant challenges the use of victim-impact testimony. Specifically, he argues that the victim-impact statute, Ark. Code Ann. 5-4-602(4) (Repl. 1997), is· unconstitutional. Appellant notes that we addressed this issue in his prior appeals. In *Kemp I, supra*, appellant challenged the constitutionality of Arkansas's victim-impact statute. We rejected his arguments and declared the statute constitutional. *Id.* In *Kemp II, supra*, appellant attempted to reargue this issue, and we held that, pursuant to the law-of-the-case doctrine, appellant's arguments provided no basis for relief. *Id.* In *Kemp II*, we also noted that we have upheld the constitutionality of the victim-impact statute on "many occasions." Because appellant has failed to provide us a reason to depart from our previous holdings, we once again conclude that the Arkansas victim-impact statute is constitutional.

 Appellant also argues that "the utilization of victim-impact evidence presented by the State in the sentencing phases of *Kemp I* and *Kemp II* was so unduly prejudicial that it rendered the trial fundamentally unfair in violation of the due process clause of the Fourteenth Amendment." Appellant once again notes that "this argument was considered in *Kemp I* and rejected." In that case, we held:

> When evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief. After reviewing the victim-impact evidence presented in this case, we conclude that this line was not crossed here.
>
> * * *
>
> We cannot say that this testimony was so unduly prejudicial that it rendered appellant's trial fundamentally unfair; thus, we reject his argument.

*Id.* (internal citations omitted). After reviewing our prior holding on this matter, we decline to reach a contrary result on the same issue in this appeal.

▪ Next, appellant seeks to reargue whether the trial court should have given certain proffered jury instructions. Specifically, appellant contends that the trial court erred in denying proffered jury instructions on the issues of "imperfect self-defense," based on Ark. Code Ann. § 5-2-614 and "mistaken belief of fact," based on Ark. Code Ann. § 5-2-206(d) (Repl. 1997). These instructions were written by trial counsel and rejected by the trial court. As noted by appellant, we addressed this issue in *Kemp I, supra.* We conclude that the analysis and reasoning articulated in *Kemp I* disposes of this issue.

▪ Finally, appellant argues that the First Division of the Pulaski County Circuit Court was without territorial jurisdiction to preside over his case. This issue was decided in *Kemp I, supra,* where we held that territorial jurisdiction in the First Division of the Pulaski County Circuit Court was proper. We decline the request that we overturn our holding that venue was proper in the First Division of the Pulaski County Circuit Court.

Affirmed.